# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

DANIEL C. JENKINS,                          CIVIL ACTION NO.  01-1407
   Plaintiff

versus

CLECO CORPORATION, et al,                  MAGISTRATE JUDGE JAMES D. KIRK
   Defendants.

# RULING

     Danny Jenkins  ("Jenkins") brought this disability discrimination action against CLECO Corporation ("CLECO") pursuant to the Americans with Disabilities Act of 1990, 29 U.S.C. § 12101, *et seq.*  ("ADA") and the similar Louisiana Employment Discrimination Law, L.S.A.-R.S. 23:322-324 ("LEDL").  Jenkins alleges that CLECO violated the ADA and LEDL by failing to accommodate his disability.  Pursuant to consent of the parties, the district judge referred the case to me for trial and disposition.  The parties waived their jury trial request and the case was tried without a jury before me in Alexandria on May 23- 24, 2005. At the conclusion of the plaintiff's case, defendant, CLECO, moved for a "directed verdict" which the court treats as a motion to dismiss under FRCP 41(b)[1] and which the court pretermitted until after all the evidence was heard. Defendant chose not to put on any evidence. Post trial briefs were allowed and the case is now ready for decision.

_____

[1]  See <u>James v. DuBreuil</u>, 500 F.2d 155 (5th Cir. 1974); <u>Delta Truck & Tractor, Inc. v. J. I. Case Co.</u>, 975 F.2d 1192 (5th Cir. 1992).

## I.   FACTS

Plaintiff, Danny Jenkins worked for CLECO as a Senior Line Mechanic (lineman) for fourteen years when, on September 26, 1993, a utility pole which he was climbing broke, causing him to fall to the ground and fracture his left femur.  The comminuted fracture required surgery and the implantation of a rod and screws which are still in place.  The injury resulted in some permanent deformity to the leg and difficulty with motion and weight bearing and causes the leg to lock.

Jenkins was treated, and the surgery performed by Dr. Douglas Waldman, an Orthopedic Surgeon in Alexandria. Plaintiff went on short term disability until March 26, 1994 and then long term disability until November 10, 1994.  Jenkins then returned to work with restrictions that he not climb.  Although Jenkins' job title remained Senior Line Mechanic, he did not perform the essential duties of line mechanic because of his injury. He patrolled the lines and performed "substation and meter activities", continuing physical therapy sessions "a couple hours per day." Because the company could not justify paying Jenkins as a lineman when he was not performing the duties of a lineman, he was transferred to the position of Customer Service Specialist[2] on June 3, 1995. He did not request the new job, he said. The company agreed to pay him two years' pay differential between his job as lineman and his job as Customer Service Specialist.[3] He again went on short term disability leave from November 1, 1996 to December 8, 1996 when CLECO informed him that his job duties as Customer Service Specialist were not within Dr. Waldman's restrictions which had been placed on him. At that time, Dr. Waldman had written a letter saying that Jenkins should not'

---

[2]  A Customer Service Specialist primarily connects and disconnects electric meters. See Exh. 100.

[3]  There is no explanation as to why he was paid two years' pay differential.

work unaccompanied and should not work on rough terrain, with unsure footing and should not climb ladders, work at night or in an isolated situation.[ Exh. 117-002 ] After Dr. Waldman modified the restrictions [Exh. 117-003] Jenkins returned to work again as a Customer Service Specialist, where he remained until October 14, 1997.

In September, 1997, Jenkins was asked to work for one day in Colfax, Louisiana, a small community about 20 miles north of Pineville, where Jenkins had been working. Jenkins reported then that he had injured his leg about two weeks prior when he had stepped in a hole and didn't think he should work in a rural area that day. CLECO would not agree to his request to work closer to home and so plaintiff went to Colfax that day to work.

Because plaintiff's leg had begun to swell, Dr. Waldman again said Jenkins could not perform the job as Customer Service Specialist. Therefore, on October 14, 1997, plaintiff again went on short and long term disability until December 10, 1999.

While on disability, in June 1998, plaintiff applied for the job of Service Planner because he thought it would meet his physical needs.[4] He had heard of the job opening, which was one helping customers plan electrical service, from co-workers. The job involved walking in rough terrain, jumping fences, creeks, ditches and occasionally climbing over fences. [Exh. 105]. However, plaintiff testified that it was a daylight job, outside work was done only on clear days and he was usually not alone. Overall, he said, the job was less physically difficult than that of Customer Service Specialist. Plaintiff testified that Dr. Waldman had OK'd the job on a trial basis. However, Jenkins did not get the job.

In December 1999, Richard Sasser, Human Resources Manager, wrote to Jenkins, [Exh.

---

[4] Plaintiff had also applied for the position in 1996.

107], saying that he and Jenkins had been discussing his returning to work. The letter said that CLECO was willing to retrain Jenkins with computer skills so that he could become a dispatcher or "related position", which Sasser testified only meant Call Center Specialist. When no one had contacted Jenkins, he wrote to Sasser on November 22, 1999 and also told Sasser that Dr. Waldman had again released him to do the job of Customer Service Specialist. [Exh. 108] Jenkins testified that he would also have been willing to do other jobs as well. Sasser responded [Exh. 109] that there were no vacant Customer Service Specialist positions but that arrangements had been made for the training, with pay. Sasser testified that Jenkins was given a job classification so that he would receive a paycheck and Jenkins began training. Just two weeks later, on Thursday, December 16, 1999, Jenkins went to Sasser [Exh. 110] and, according to Sasser, said he did not want to continue the training. Jenkins was concerned with the amount of money he was making, with "keeping his options open" and with accommodations for his leg. The two agreed that Jenkins would take a couple of days off and think about it. Jenkins left Sasser a message the next day that he would continue with the training and was back in training Monday morning.

By February, CLECO had determined that Jenkins was sufficiently trained and Sasser sent Jenkins a letter, dated February 2, 2000, offering him the position of Call Center Specialist.[5] Prior to that time, Sasser had received a copy of a letter from Dr. Waldman to CLECO's workers compensation insurer, Liberty Mutual, saying that Jenkins could "try a call center position if he could alternate between sitting and standing. However, we would have to see how he did with his job before releasing him permanently." Dr. Waldman stated that Jenkins would not be able to sit through

_____

[5] A Call Center Specialist answers telephone inquiries from customers concerning electric service outages and other matters. [Exh.102].

eight hour days of training without breaks and that Jenkins' impairments had been previously outlined on March 1999 [Exh. 122-012] .

Jenkins called Sasser the same day he received the letter and left a message telling Sasser that he wanted to decline the offer and continue training and find something that was more suitable. He then met with Sasser on the 3rd or 4th, and, he testified, he was told by Sasser that that was the only job he would be offered.[6]  Sasser testified that plaintiff voiced two concerns: one that the job did not pay as much money as he thought he should be paid and two, "he was concerned about sitting for eight hours a day...." Sasser explained that the company was willing to accommodate him and had accommodated him and he needed to "really go home and think about this." Plaintiff did not learn from CLECO at the meeting what the physical aspects of the job would involve as far as sitting and standing.

Jenkins testified that he wanted to talk to Dr. Waldman about the job and he convinced Sasser to give him time to think about the offer.  Sasser allowed plaintiff to take a week of vacation to decide what he wanted to do.

During that week, Jenkins returned to see Dr. Waldman.  Jenkins told Dr. Waldman that he would have difficulty sitting at a desk where he would be cramped. Jenkins also told the doctor that it was an eight hour job and "you had to stay at the desk to perform the job." However, Jenkins admitted that he did not have a copy of the job description of Call Center Specialist. Jenkins testified he did not know of Dr. Waldman's January 16, 2000 letter allowing him to "try" the Call Center job,

---

[6] There are notes Sasser made of Sasser's meeting with Jenkins on December 16, 1999 but none of record regarding the meeting of February 3rd or 4th, 2000.  Sasser testified that it was his practice to make such notes after a meeting with an employee.  He testified that he recalls some notes or letter concerning the meeting but it could have been a letter to CLECO's "labor attorney".

if he could alternate sitting and standing.

Jenkins then sent Sasser the letter dated February 11, 2000 in which he declined the offer of the Call Center job, saying that he could not meet the physical job requirements because of the sitting. Jenkins attached Dr. Waldman's report of February 8, 2000. [Exh. 121-003][7] Jenkins was terminated by CLECO on May 1, 2000.

On December 26, 2000, Jenkins filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue on February 28, 2001, and Jenkins brought suit on May 30, 2001 which was removed to this Court on July 25, 2001. He seeks compensatory and punitive damages, back and front pay and benefits, reasonable attorney's fees and costs.

## II.    LAW AND ANALYSIS

### A.    Motion for dismissal under FRCP 41 (b)

In bench trials, motions for directed verdict are properly treated as motions for involuntary dismissal under Rule 41 (b) which permits dismissal only if the facts and law establish that the non-movant is entitled to no relief. James v. DuBreuil, 500 F.2d 155 (5th Cir. 1974). Stated differently, dismissal may be ordered only where the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict. Delta Truck & Tractor, Inc. v. J. I. Case Co., 975 F.2d 1192 (5th Cir. 1992).

### B.    The Americans With Disabilities Act

The ADA prohibits employment discrimination against persons with disabilities. To prevail on an ADA claim, a plaintiff must prove that (1) he has a "disability," (2) he is "qualified" for the

---

[7] See also Exh. 125-003.

6

position in which he seeks employment, and (3) he was "discriminated" against because of his disability.  Gonzales v.  City of New Braunfels, Texas, 176 F.3d 834, 836 (5th Cir.1999). "Disability" is defined in the statute as "a  physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12112(a).  The plaintiff can establish that he has a disability in one of three ways:

> (1)     by showing that he has a mental or physical impairment that substantially limits him in a major life activity;
>
> (2)     by showing a record of such an impairment; or
>
> (3)     by showing that he is regarded as having such an impairment.

See 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).  If plaintiff establishes that he is an otherwise qualified individual with a disability, "discrimination" under the statute includes not making reasonable accommodations for his known physical limitations.  Allen v.  Rapides Parish School Bd., 204 F.3d 619, 620-22 (5th Cir.  2000) (citing 42 U.S.C. § 12112(b)(5)(A)).

In this case, Jenkins alleges that he has  physical impairments that substantially limit him in a major life activity (i.e., an "actual" disability), which CLECO failed to reasonably accommodate.

### 1.     Is Jenkins Substantially Limited in a Major Life Activity Because of His Impairments.

"[I]t is axiomatic that '[a] physical impairment,' standing alone, is not necessarily a disability as contemplated by the ADA." Deas v. River West, L.P., 152 F.3d 471, 479 (5th Cir.  1998). Rather, a plaintiff is required to show that the physical impairment substantially limits him in one or more major life activities. *Id.*  "Major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29

C.F.R. § 1630.2(I); see also <u>Bridges v. City of Bossier</u>, 92 F.3d 329, 332 (5th Cir. 1996). The list is not exhaustive.

Jenkins alleges that his leg injury and resulting restrictions substantially limit him in the major life activities of climbing, walking on rough terrain and sitting. Specifically, Jenkins contends that he can no longer climb tall poles to perform the duties of lineman, that his ability to walk on uneven or rough ground and "step over things" is limited, and that he is unable to sit for more than three hours continuously and must alternate sitting and standing. Jenkins does not assert disability based on the major life activity of working.[8]

---

[8] When referring to the major life activity of working, the EEOC uses a specialized definition of the term "substantially limits" which requires the plaintiff to show that he is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I); see also <u>Dutcher v. Ingalls Shipbldg.</u>, 53 F.3d 723, 726 (5th Cir. 1995) (citing same). If an individual is <u>not</u> substantially limited with respect to any other major life activity, the ability to perform the major life activity of working should be considered. <i>Id.</i> The Court looks at a number of factors when determining whether any major life activity is substantially limited: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or expected long term impact. <u>Sherrod v. American Airlines, Inc.</u>, 132 F.3d 1112, 1119 (5th Cir. 1998)(citing 29 C.F.R. § 1630.2(j)(2)). When the major life activity of working is asserted, the Court may also look at the following factors:

(A)     The geographical area to which the individual has reasonable access;

(B)     The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the

individual is also disqualified because of the impairment (class of jobs); and/or

(C)     The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar

The Fifth Circuit has recognized that, while not specifically listed in the EEOC regulations, "major life activities could include lifting, reaching, sitting, or standing." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723 (5th Cir. 1995) at 725, fn 7. Major life activities refers to those activities that are of central importance to most people's everyday lives.[9] The Fifth Circuit has determined that climbing is not a major life activity. Rogers v. Int'l. Marine Terminals, Inc. 87 F.3d 755, 758 (5th Cir. 1996)("Climbing is not such a basic, necessary function and this court does not consider it to qualify as a major life activity under the ADA.") . I find that the inability to walk on uneven surfaces, is also not a major life activity. However, I find that sitting is a major life activity.[10]

The next step, then, is to determine if Jenkins is substantially limited, that is severely restricted [11], in sitting. [12] An impairment must be severe to qualify as a disability under the ADA.

_____

training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs).

*Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(ii)).

As the Supreme Court recently indicated, defining "major life activities" to include work has the potential to make the ADA circular. Sutton v. United Air Lines, Inc., 527 U.S. 471, 474, 492 (1999). Assuming, as the Supreme Court did, that work is a major life activity, an employee has the burden of producing evidence that, because of his physical impairment, he is unable to perform a class of jobs or broad range of jobs in various classes, not merely one job or a narrow range of jobs.

[9] Toyota Motor Mfg., Ky., Inc. v. Williams, 122 S. Ct. 681 (2002).

[10] See Dupre v. Charter, 242 F.3d 610 (5th Cir. 2001) at p. 613, fn3 ("we assume without deciding that sitting and standing are both major life activities.") Accord, Oesterling v. Walters, 760 F.2d 859 (8th Cir. 1985).

[11] See Hinojosa v. Josten's Inc., 2005 WL 834847 (5th Cir. 2005) (unpublished).

[12] Even if climbing were also a "major life activity", I find that Jenkins is not substantially limited in climbing within the meaning of the ADA. Jenkins testified that he is no longer able to climb utility poles. However, he testified that in performing the job of Customer

9

<u>Waldrip v. General Electric Company</u>, 325 F.3d 652 (5th Cir. 2003).

Jenkins is not substantially limited in sitting within the meaning of the ADA. Dr. Waldman's testimony and records show that plaintiff can sit for up to about three hours at a time and that he must alternate between sitting and standing. Dr. Waldman also thought that Jenkins would need ergonomic furniture. Jenkins was able to sit during the day-long computer training classes with morning, afternoon and lunch breaks, without complaint. While Jenkins has definite limitations with regard to sitting, his sitting limitations do not prevent him from performing activities that are of central importance to most people's everyday lives. No evidence was presented that Jenkin's particular impairment substantially limits his particular major life activities. <u>Waldrip</u> at p.655.

In <u>Dupre v. Charter</u>, 242 F.3d 610 (5th Cir. 2001), the Fifth Circuit had occasion to consider an argument similar to plaintiff's here. Dupre suffered from a back condition and the court was called upon to decide whether, assuming that sitting is a major life activity, Dupre's condition substantially limited her. She testified that her limitations on sitting required her to get up every hour. The court held that Dupre's ability to sit in one place for up to one hour at a time before having to walk around "makes clear that the 'condition, manner, or duration' under which she was able to

---

Service Specialist, it was sometimes necessary for him to climb short distances, for example where a home is elevated, such as a mobile home. The job of Service Planner, for which Jenkins applied and which he believed he could perform, required that he occasionally climb fences. Jenkins also testified that he can use a riding mower and that he can walk up and down high school stadium bleachers at an event. Jenkins exercises using a StairMaster machine (stair climber) which simulates climbing stairs and he walks the track and field at the high school. Although it is undisputed that plaintiff has definite climbing limitations, particularly at heights such as on a utility pole, his inability to climb is not so intrusive as to substantially limit his everyday life. Rather, his limitation only means that there are certain jobs he cannot perform, such as his previous job as a lineman.

sit or stand was not significantly restricted as compared with the average person."

While each case requires a "rigorous and carefully individualized inquiry"[13] into the claimed disability to determine the existence of disabilities, the Dupre case offers guidance to the court here, for Jenkins' limitations regarding sitting are far less than Dupre's.[14]

Because Jenkins is not substantially limited in the major life activity of sitting, he is not disabled within the meaning of the ADA and LEDL.[15]

### 2. Did CLECO Offer Reasonable Accommodation?

However, even if plaintiff were determined to be disabled, he has not shown that CLECO failed to offer reasonable accommodation for his limitations.

Jenkins does not claim that reasonable accommodation should have been made in his prior job of lineman. Because of his injury and inability to climb utility poles, he admits that he could no longer perform the essential duties of that job, and that no accommodation could have been provided to allow him to perform it. Instead Jenkins asserts that he was not able to perform the job of Call Center Specialist because of his sitting limitations. Jenkins also claims that there were other jobs within the large CLECO organization which he could have performed.

It is the plaintiff's burden to request reasonable accommodation. Loulseged v. Akzo Nobel, Inc., 178 F.3d 731 (5th Cir. 1999). Where, as here, no reasonable accommodation in plaintiff's own

---

[13] Waldrip, supra, at p. 654.

[14] See cases in accord listed in Wicks v. Riley, 125 F.S.2d 1282, 1291 (D. Kansas 2000).

[15] Even if walking on uneven ground were considered to be a major life activity, plaintiff is not substantially limited in that either, for his testimony was that he would have been required to work on uneven ground in the job of Service Planner and was also required to in his job of Customer Service Specialist, a position he points to as being vacant and to which he should have been assigned.

job can be made, plaintiff may be transferred to a different job. <u>Gonzales v. City of New Braunfels, Texas</u>, 176 F.3d 834 (5th Cir. 1999); 42 U.S.C. 12111(9)(B). However, plaintiff is entitled to a different job only if there is a vacancy. <u>Gonzales</u>, supra at p. 838; 42 U.S.C. 12111(9)(B); <u>Morton v. GTE North, Inc.</u>, 922 F. Supp. 1169 (N. D. Tex. 1996). It is plaintiff's burden to prove that a vacant job position exists which he could, with reasonable accommodation, perform; further, the employer is not required to create a job for plaintiff. <u>Foreman v. The Babcox and Wilcox Company</u>, 117 F.3d 800 (5th Cir. 1997).[16] Nor is an employer required to "bump" another employee out of his job to make room for a disabled employee. See discussion in <u>Foreman</u>, at p. 810. An employee in such circumstance has no right to a promotion in order to be placed in a different job. <u>See Allen, supra,</u> at p. 622; <u>Still v. Freeport- McMoran, Inc.</u>, 120 F.3d 50 (5th Cir. 1997 )(citing <u>White v. York Int'l Corp.</u>, 45 F.3d 357, 362 (10th Cir. 1995)). And he has no right to choose the job to which he will be assigned. <u>Allen v. Rapides Parish School Board</u>, 204 F.3d 619 (5th Cir. 2000). The ADA protects a disabled employee from discrimination, not unfair treatment. <u>Allen</u>, supra. Finally, a disabled employee has no right to receive the same compensation as he received in his pre-disability status job. See <u>Allen</u>, supra[17]

Plaintiff, through counsel, argues that Jenkins should have been given the job of Customer Service Specialist, a job to which he had previously been assigned after his injury. Jenkins points

------

[16] See <u>Morton v. GTE North, Inc</u>. 922 F. Supp. 1169 (N.D. Tex. 1996), aff'd 114 F.3d 1182, (5th Cir. 1997), cert. den. 118 S. Ct. 205 (1997). See also, <u>Phelps v. Optima Health, Inc</u>. 251 F.3d 21, (1st Cir. 2001); <u>Jackan v. New York</u>, 205 F.3d 562, (2nd Cir. 2000);<u>Coulson v. The Goodyear Tire and Rubber Co.</u>, 2002 WL 408872 (6th Cir. 2002).

[17] The regulations instruct that the employer should reassign the individual to an equivalent position, in terms of pay and status if the person is qualified and if the position is vacant. See <u>Hedrick v. W. Reserve Care Sys</u>., 355 F.3d 444 (6th Cir. 2004).

to testimony on cross examination by Richard Sasser, CLECO's Human Resources Manager. Sasser identified a list of employee terminations which showed that just before plaintiff was terminated a Customer Service Specialist had been fired from his position. Jenkins argues that the job was thus vacant. However, Sasser pointed out that just because someone leaves a job, does not mean the position is vacant, because CLECO then reviews the need for the position before declaring it vacant and posting it to invite applications. Further, in February Sasser had written to Jenkins to advise him that at that time, there were no Customer Service Specialist jobs vacant. No evidence was presented that, at the time the employee was fired, Jenkins pointed out the job to CLECO as being one to which he could be assigned, and the first time it was mentioned, according to the evidence, was in court. It was plaintiff's burden to request reasonable accommodation in the form of a specific job which he thought he could perform.[18] However, plaintiff had no right to any particular job and CLECO had offered Jenkins the job of Call Center Specialist.

Jenkins argues that CLECO should have engaged with him in the interactive process during the time period after he declined the Call Center Specialist job in early February and was terminated in May. The regulations provide that, in order "[t]o determine the appropriate accommodation, it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. 29 C.F.R. 1630.2(o)(3).[19] The interactive process requires the input of

---

[18]  See cases at footnote 16, supra.

[19]  The Fifth Circuit has held that the regulations offer "persuasive authority" and "significant guidance" but are not entitled to deference. Dutcher, supra at p. 726.

the employee as well as the employer; the interactive process is a shared responsibility. See discussion, <u>Loulseged</u>, 178 F.3d at 735.

CLECO knew what plaintiff's limitations were and had already made reasonable accommodations to plaintiff by offering him the Call Center job, a job which Dr. Waldman had, on January 16, 2000 [Exh. 121-002], approved for at least a trial basis with the understanding that plaintiff would be allowed to alternate between sitting and standing.[20]  In addition, Sasser testified that once plaintiff tried the job, he would know what accommodation needed to be made for him. Even if plaintiff was unaware that his doctor had provisionally approved the job, it was his duty to engage in a dialogue with CLECO to determine whether he could, with reasonable accommodation, perform the job offered him.[21]  Plaintiff argues that he did not know that Dr. Waldman had approved the job and that, if he had known-knowledge that CLECO had- he would have accepted the job.  The fact is, however, that plaintiff did not immediately decline the job.  Instead, he returned to see Dr. Waldman. This was <u>after</u> Dr. Waldman had first approved the job and plaintiff had been offered the job. At that time, Dr. Waldman changed his opinion and said that plaintiff could not perform the job based on plaintiff's description of the job to him.  Therefore, plaintiff's rejection of the job was not due to the fact he did not know that Dr. Waldman had approved the job or because CLECO had superior knowledge; it was because, in his most recent visit, Dr. Waldman said he could not perform the job.  Dr. Waldman changed his opinion based only on plaintiff telling him the job required him

_____

[20]  Mr. Sasser testified that he had received a copy of the letter, which was addressed to the worker's compensation insurer.

[21]  Dr. Waldman's February 8, 2000 letter, Exh. 121-003 and his report of the same date, Exh. 125-003 were both based on Dr. Waldman's understanding of what sitting was required in the Call Center position, information he no doubt obtained from plaintiff.

to sit for eight hours. Plaintiff testified he did not have a job description. He did not discuss with CLECO the job duties, physical requirements, or whether he would be able to perform the job with alternate sitting and standing or other accommodation. Neither did he obtain an accurate job description for Dr. Waldman's use in evaluating the job. Finally, plaintiff did not attempt to perform the job in order to see what accommodations he might need. Any breakdown in the interactive process was of plaintiff's making. Plaintiff could not fulfill his responsibilities in the interactive process simply by telling CLECO that Dr. Waldman would not approve the job. Rather, it was up to plaintiff to discuss his limitations and Dr. Waldman's restrictions with CLECO so that he and CLECO could agree on accommodations which would allow plaintiff to perform the job. An employee's physician is not the final decision-maker under the ADA and his role is not to approve or disapprove a job. Indeed, most physicians have little training in regard to vocational matters and are therefore not qualified to testify as to vocational matters.[22] Rather, the physician's role is to specify the medical limitations and restrictions which apply to the employee. It is then up to the employer and the employee to determine if a suitable position can be found or if modifications (accommodations) can be made in a job so that plaintiff can perform the job. Here plaintiff simply told CLECO that his doctor would not approve the job and then "declined" the offer of employment.

CLECO, on the other hand, had obtained plaintiff's limitations from Dr. Waldman, through Liberty Mutual, and had found a job which, with modifications, plaintiff could perform. CLECO met its responsibilities to engage in the interactive process. See Guerra v. United Parcel Service, 250 F.3d 739 (5th Cir. 2001); Rizzo v. Children's World learning Centers, Inc., 213 F.3d 209 (5th Cir.

_____

[22] See generally, Millet v. Schweiker, 662 F.2d 1199, 1203 (5th Cir. 1981); Turley v. Sullivan 939 F.2d.524, 527 (8th Cir. 1991); Loya v. Heckler, 707 F.2d 211,214 (5th Cir. 1983).

2000) (Rizzo II).

Although CLECO had arranged to make modifications for plaintiff in the Call Center job, it should be noted that, while plaintiff complains that CLECO did not place him in some other job, plaintiff never pointed out other jobs to CLECO during that time that were vacant and that he believed he could do, nor did he carry his burden at trial by proving that any such job vacancies existed. Plaintiff has the burden of requesting reasonable accommodation. But even then, an employer is required to transfer an employee to another position only if it is vacant.

Plaintiff also suggests that CLECO should have obtained an independent medical examination (IME) of plaintiff and/or a functional capacities evaluation (FCE). However, it is plaintiff's burden to establish the extent of his limitations. CLECO had no legal obligation to obtain testing of plaintiff. In any event, plaintiff's medical condition is not disputed and plaintiff's injury and limitations are clear. An IME or FCE would have added little.

I find that plaintiff has failed to prove a vacant job position existed for which he was qualified or that CLECO failed to make reasonable accommodation to plaintiff for such job. I further find that CLECO made reasonable accommodation to plaintiff by offering him the Call Center Specialist position.

### 3. Did CLECO retaliate?

Finally, plaintiff alleges that CLECO retaliated against him by firing him because he requested reasonable accommodation. A request for reasonable acommodation is protected activity under the ADA and LEDL. However, plaintiff was terminated because he "declined" CLECO's offer of employment which I have found was a reasonable accommodation. There is no evidence CLECO retaliated or discriminated against plaintiff.

### III. CONCLUSION

Since being terminated in May of 2000, plaintiff has applied for only one job, although he testified that he has "called around". Plaintiff is obviously bright, articulate and personable and he could, as Sasser believed, with the proper training, quickly progress to a supervisory position in most any job he obtains. It is unfortunate that plaintiff chose to reject the accommodation and training offered him by CLECO. However, he is simply not entitled to more under the ADA.

For the foregoing reasons I find that even though plaintiff suffered a serious injury and has resulting limitations, he is not disabled within the meaning of the ADA and plaintiff's claims should be DISMISSED with prejudice.

E-signed at Alexandria, Louisiana this 17th day of June, 2005.


JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE